IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| JOSEPH SPERLING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| VILLAGE OF GLENVIEW, Glenview | ) |
| Police Officer JIM HORN, Glenview | ) |
| Police Sergeant THERESA URBANOWSKI, | ) |
| CITY OF CHICAGO, Chicago Police | ) |
| Officer Sergeant JAMES PADAR, | ) |
| Chicago Police Officer VINCE MORGAN, | ) |
| and Chicago Police Officer WILLIAM | ) |
| PRUENTE, | ) |
| | ) |
| Defendants. | )    JURY TRIAL DEMANDED |

## COMPLAINT

NOW COMES Plaintiff, JOSEPH SPERLING, by his attorneys, LOEVY & LOEVY, and complaining of Defendants, VILLAGE OF GLENVIEW, Glenview Police Officer JIM HORN, Glenview Police Sergeant THERESA URBANOWSKI, CITY OF CHICAGO, Chicago Police Officer Sergeant JAMES PADAR, Chicago Police Officer VINCE MORGAN, and Chicago Police Officer WILLIAM PRUENTE (collectively, "Defendants"), states as follows:

### Introduction

1.    In June of 2013, the Defendant Officers arrested Plaintiff without probable cause and performed an illegal search of his car.

2.    During the resulting criminal proceedings, the Defendant Officers proceeded to testify falsely about the events surrounding Plaintiff's arrest, with each of the five Defendant Officers providing the same false story.

3.  Unbeknownst to some of the Defendants, the events at issue were captured on videotape. The videotape proves not only that each of the Defendant Officers lied to the judge about the circumstances of Plaintiff's arrest and the search of his car, but that each of the five of them lied in exactly the same manner, with each reciting the same false version of events.

4.  The criminal case having been resolved in Plaintiff's favor, he now brings this action pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

## Jurisdiction and Venue

5.  This Court has jurisdiction of the action pursuant to 28 U.S.C. § 1331. Venue is proper under 28 U.S.C. § 1391(b). On information and belief, all or most of the parties reside in this judicial district, and the events giving rise to the claims asserted herein all occurred within district.

## The Parties

6.  Plaintiff, Joseph Sperling, is a 23 year-old resident of the Village of Glenview.

7.  Defendants Jim Horn and Theresa Urbanowski are police officers employed by the Village of Glenview. Defendants James Padar, Vince Morgan, and William Pruente are all police officers employed by the City of Chicago. All of the officers are sued in their individual capacities.

8.  Defendants Village of Glenview and City of Chicago are both municipal corporations, located in Northern Illinois.

2

**Background**

9.    In 2008, Plaintiff graduated from Notre Dame High School in Niles.  He subsequently earned college credits at Northeastern University and Oakton Community College.

10.    In June of 2013, Plaintiff, then 22 years old, was living at his parents home in Glenview, and working as a delivery driver for a restaurant.

11.    On or about June 6, 2013, at approximately 2:50 p.m., Plaintiff left his parents' home by car.

12.    On the day at issue, the Chicago Defendants had Plaintiff under surveillance based on their suspicion that Plaintiff was involved in drug activities.  These Chicago Defendants informed the Glenview Defendants of their surveillance of Plaintiff, and elicited the Glenview Defendants' assistance in conducting a traffic stop of Plaintiff's car.

**Plaintiff's Arrest**

13.    Several blocks from Plaintiff's home, in the vicinity of East Lake Avenue and Tall Tree Road, Officer Horn, with Officer Pruente in his passenger seat, activated the lights on their squad car and pulled over Plaintiff's car.

14.    The purported justification for pulling over Plaintiff's car was a turn signal violation.  This justification was pretextual.  Plaintiff had used his turn signal, and had not violated any traffic laws.

15.    Immediately upon exiting their vehicle and approaching Plaintiff, the Defendant Officers arrested him,

3

whereupon Officer Pruente placed him in handcuffs. Plaintiff was then placed into the back of one of the Defendants' squad cars.

16. Prior to asking Plaintiff any questions, in the presence of the other Defendant Officers, Officer Pruente reached into Plaintiff's car, unlocked the door, entered, and began searching the car.

17. Following Plaintiff's arrest, and pursuant to the illegal search, a bag containing illegal drugs was recovered from underneath the backseat of Plaintiff's car. This bag was not visible in plain view, and was discovered only as a result of the illegal search of Plaintiff's car.

18. The arrest of Plaintiff and search of his car was unlawful. There was insufficient legal justification to have stopped Plaintiff, to have arrested him, or to have searched his car.

**Squad Car Video**

19. The policy of the Glenview Police Department requires videotaping of arrests such as the one at issue here. Specifically, when Glenview police officers activate the lights on their squad cars, a video camera on those squad cars proceeds to videotape all encounters with civilians, and a remote microphone captures audio. This policy is mandatory.

20. On the day of Plaintiff's arrest, however, Defendant Chicago Police Officer Pruente asked the Glenview Defendants to turn off their squad car video cameras so that the encounter with Plaintiff would not be recorded.

21. In response to that request, Officer Horn deactivated his squad car video during Plaintiff's arrest. Unbeknownst to the other Defendants, however, Sergeant Urbanowski did not.

### The Criminal Case

22. Based on the Defendants' descriptions of Plaintiff's arrest, as memorialized in their police reports and as communicated to the State's Attorney's Office, Plaintiff was charged with felony drug crimes.

23. If convicted, Plaintiff faced years in prison. Accordingly, Plaintiff had to pay thousands of dollars to retain a criminal defense attorney.

### The March 31 Hearing

24. On or about March 31, 2014, the judge in Plaintiff's criminal case held a hearing on Plaintiff's motion to suppress his arrest and evidence recovered therewith.

25. Prior to the March 31 hearing, each of the five Defendant Officers met with the Assistant State's Attorney assigned to prosecute the case. At that meeting with the Assistant State's Attorney, the Defendant Officers reached an agreement to testify falsely, under oath, about how Plaintiff's arrest occurred.

26. Thereafter, each of the five Defendant Officers took the witness stand and gave a false account of Plaintiff's arrest.

5

27.     The perjury referred to in the preceding paragraph included the following false statements:

a.     Each of the Defendant Officers testified under oath that Plaintiff was initially asked for his license and insurance.  That was false.  The Defendants immediately placed Plaintiff under arrest, without asking him any questions.

b.     Each of the Defendant Officers testified under oath that Plaintiff was asked if he had any illegal drugs in his car, and that Plaintiff supposedly made an admission that there was marijuana in the back.  This was false.  Plaintiff was not asked any such question, and made no such admission.

c.     Each of the Defendant Officers testified under oath that they walked Plaintiff to the rear of the car, where he stood with Horn while Pruente searched the car.  This was false.  Plaintiff had already been arrested and placed in the back of a squad car by the time the Defendants searched his car.

d.     Each of the Defendant Officers testified under oath that Plaintiff was arrested only after they located drugs, and after Plaintiff acknowledged that they were his.  This was false.  Plaintiff had already been arrested and placed in a squad car by the time the Defendants located any illegal drugs.

e.     Each of the Defendant Officers testified under oath that the bag containing illegal drugs was in plain view in the back of the car.  This was false.  The bag was hidden under the seat, and could not have been discovered without a search.

28.  At the conclusion of the testimony of each of the five Defendant Officers, and in rebuttal, the court was shown the videotape of Plaintiff's arrest that Plaintiff's criminal defense attorney had obtained pursuant to subpoena.  This video was recorded by the dash camera on Sergeant Urbanowski's squad car, and it captured the foregoing events on tape.

29.  The videotape proved that each of the five Defendant Officers had lied to the court about the events of Plaintiff's arrest in all of the respects set forth above. Moreover, the videotape showed that each of the five Defendant Officers lied in precisely the same ways, proving that the five Defendants and the Assistant State's Attorney had deliberately and maliciously concocted a false story to provide to the judge.

30.  Upon seeing the video depicting what actually happened during Plaintiff's arrest, and the extent to which that reality contradicted the sworn testimony of the five Defendant Officers, Cook County Circuit Judge Catherine Haberkorn granted Plaintiff's motion to suppress the drugs.

31.  In so doing, Judge Haberkorn stated: "Obviously this is very outrageous conduct... All officers lied on the stand today... All their testimony was a lie.  So there's strong evidence it was a conspiracy to lie in this case, for everyone to come up with the same lie...  Many, many, many, many times they all lied."

32.  On the basis of the foregoing, the criminal charges against Plaintiff were all dismissed in a manner indicative of his innocence.

7

**Legal Claims**

33.    In the manner described more fully above, Defendants violated Plaintiff's constitutional rights, causing him damage.   Among others, Defendants violated Plaintiff's rights under the Fourth, Fifth, and Fourteenth Amendments.

34.    Defendants' conduct also constitutes the tort of malicious prosecution under state and federal law in that the Defendants caused Plaintiff to prosecuted for a crime he did not commit, all without probable cause.

35.    Defendants also reached an agreement to deprive Plaintiff of his constitutional rights via illicit means, and one or more of them took actions in furtherance of this conspiracy, all in violation of both state and federal law.

36.    Some or all of the Defendants also failed to intervene to prevent the constitutional violations described herein, notwithstanding a reasonable opportunity to have prevented those constitutional violations.

37.    The misconduct described herein was objectively unreasonable, and undertaken with malice, willfulness, and reckless indifference to the rights of others such that the Defendants' actions shock the conscience.

38.    Plaintiff's injuries were proximately caused by a policy and practice on the part of the City of Chicago to pursue wrongful convictions in drug cases through untruthful testimony. In this way, the City of Chicago violated Plaintiff's rights by maintaining policies and practices which were the moving force driving the foregoing constitutional violations.

8

39. The above-described widespread practices, so well-settled as to constitute *de facto* policy in the Chicago Police Department, was able to exist and thrive because municipal policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it.

40. The widespread practices described in the preceding paragraphs were allowed to flourish because the City of Chicago declined to implement sufficient training and/or any legitimate mechanism for oversight or punishment. Indeed, the Department's system for investigating and disciplining police officers accused of this type of misconduct was, and is, for all practical purposes, nonexistent. As a result, officers are led to believe that they can act with impunity, thereby encouraging the very type of abuses which befell Plaintiff.

41. All of Defendants' interactions with Plaintiff and the criminal case brought against him were undertaken under color of law, and within the scope of their employment.

42. Because each of the Defendants acted within the scope of their employment, the City of Chicago and the Village of Glenview are therefore liable as their employers for any resulting damages and award of attorneys' fees.

9

WHEREFORE, Plaintiff, JOSPEH SPERLING, respectfully requests that the Court enter judgment in his favor and against Defendants VILLAGE OF GLENVIEW, Glenview Police Officer JIM HORN, Glenview Police Sergeant THERESA URBANOWSKI, CITY OF CHICAGO, Chicago Police Officer Sergeant JAMES PADAR, Chicago Police Officer VINCE MORGAN, and Chicago Police Officer WILLIAM PRUENTE, awarding compensatory damages, costs, and attorneys' fees, along with punitive damages against each of the individual Defendants in their individual capacities, as well as any other relief this Court deems appropriate.

### JURY DEMAND

Plaintiff, JOSEPH SPERLING, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

RESPECTFULLY SUBMITTED:

_____
Attorneys for Plaintiff

Arthur Loevy
Jon Loevy
Mike Kanovitz
LOEVY & LOEVY
312 North May Street
Suite 100
Chicago, IL 60607
(312) 243-5900

10